1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13
14
15
16
17

JESSE THOMPSON, et al.,

                  Plaintiffs,

      v.

NORTH AMERICAN TERRAZZO,
INC., et al.,

                  Defendants.

CASE NO. C13-1007RAJ

ORDER

18

## I. INTRODUCTION

19
20
21
22
23
24
25
26
27

      This matter comes before the court on a motion to dismiss all individual and class claims by defendants North American Terrazzo, Inc. ("NAT"), Randy Rubenstein, Joe Geiger, Paul Singh, and Shawn Navoa.  Dkt. # 14.  Plaintiffs Jesse Thompson, Ernesto Martinez, Julio Cesar Romero, Justin Taylor, and Vitaliy Ostapyuk allege the following class and individual claims:  (1) disparate treatment and hostile work environment discrimination on the basis of race and national origin under Title VII, Title I of the 1991 Civil Rights Act, and the Washington Law Against Discrimination ("WLAD"), (2) outrage, (3) negligence and negligent supervision, (4) negligent infliction of emotional

1  distress, (5) wrongful termination or discharge under Title VII and Washington State

2  common law, and (6) violation of the Fair Labor Standards Act ("FLSA").  Dkt. # 1.

3      Plaintiffs concede that they are not pursuing a class action claim in this action.

4  Dkt. # 17 at 12.  Plaintiffs also seem to concede that Title I of the 1991 Civil Rights Act

5  does not create a substantive right and is not a basis for an independent claim apart from

6  Title VII, where they have referred to Title I as a "companion" to Title VII. Dkt. # 17 at

7  6; *see* 42 U.S.C. § 1981a (providing for damages in cases of intentional discrimination

8  under Title VII); Pub.L. 102-166, 105 Stat. 1071 (Title I entitled "Federal Civil Rights

9  Remedies").  Accordingly, the court GRANTS defendants' motion with respect to the

10  class claims and separate cause of action for Title I of the 1991 Civil Rights Act.[1]

11      Having considered the memoranda, complaint and the record herein, the court

12  GRANTS in part and DENIES in part defendants' motion to dismiss.[2]

## II. BACKGROUND

14      Plaintiff Thompson, who is African-American, worked at NAT from July 2009 to

15  August 2010 when he was terminated "because his supervisor stated 'NAT was going to

16  be a worksite for Mexicans only, and there would be no more work for him.'" Dkt. # 1

17  (Compl.) ¶ 4.  During his employment, "Thompson was repeated[ly] and openly called a

18  'nigger, white wash, black motherfucker, fucking nigger, terron, mayate, and Uncle Tom'

19  by his supervisor, Shawn Navoa[.]"  *Id.*  Many of these racially derogatory slurs were

20  said in front of another supervisor, defendant Geiger.  *Id.*  Thompson repeatedly

21  complained to supervisors Geiger and Singh and the owner Rubenstein about these

---

23  [1] The court notes that plaintiffs may pursue the remedy of damages for intentional discrimination under Title VII pursuant to Title I of the 1991 Civil Rights Act.

24  [2] The court notes that the parties have frequently failed to provide basic legal authority to the court, such as the elements of a cause of action.  The court will not undertake counsel's job.

25  Accordingly, the court has limited its analysis to the arguments that are supported by legal authority.  The court also advises the parties that while it is interested in reviewing district court

26  decisions that are factually analogous in this District, and to a lesser extent in other districts, such cases are not binding on this court.

racially derogatory slurs, but NAT never investigated the complaints, ignored the complaints, allowed the conduct to continue, and terminated Thompson from his employment with NAT after the numerous complaints to management.  *Id.* ¶¶ 5-6.

Plaintiff Taylor, who is Caucasian-American, worked at NAT from August 2004 to October 2010, when he was terminated "because his supervisor stated 'NAT was going to be a worksite for Mexicans only, and there would be no work for him."  *Id.* ¶ 7. "Taylor was repeated[ly] and openly called a 'white boy, honky, white mother****er, and white trash, by his supervisor at NAT."  *Id.*  Taylor repeatedly complained to supervisors Geiger and Singh and to owner Rubenstein about Navoa's comments, but NAT never investigated the complaints, ignored the complaints, allowed the conduct to continue, and terminated Romero from his employment with NAT after his numerous complaints to management.  *Id.* ¶¶ 8-9.

Plaintiff Ostapyuk, who is Caucasian and of Ukrainian origin, worked at NAT from 2003 to May 2010, when he was terminated "because his supervisor stated 'NAT was going to be a worksite for Mexicans only, and there would be no more work for him.'"  *Id.* ¶ 10.  During his employment, "Ostapyuk was repeated[ly] and openly called a 'white boy, honky, white mother****er, white trash, and Russian motherfucker,' by his supervisor at NAT."  *Id.*  Ostapyuk repeatedly complained to supervisors Geiger and Singh and to owner Rubenstein about Navoa's comments, but NAT never investigated the complaints, ignored the complaints, allowed the conduct to continue, and terminated Ostapyuk from his employment with NAT after his numerous complaints to management. *Id.* ¶¶ 11-12.

Plaintiff Romero, who is Hispanic-American, worked at NAT from October 2009 to December 2010 when he was terminated "because his supervisor stated 'NAT was going to be a worksite for whites only, and there would be no more work for him.'"  *Id.* ¶ 13.  During his employment, "Romero was repeated[ly] and openly called a 'wetback, border jumper, spick, and Mexican cockroach' by his supervisor[.]"  *Id.*  Romero

repeatedly complained to supervisors Geiger and Singh and to owner Rubenstein about Navoa's comments, but NAT never investigated the complaints, ignored the complaints, allowed the conduct to continue, and terminated Romero from his employment with NAT after his numerous complaints to management.  *Id.* ¶¶ 14-15.

Plaintiff Martinez, who is Hispanic-American, worked at NAT from September 2008 to August 2010 when he was terminated "because his supervisor stated 'NAT was going to be a worksite for whites only, and there would be no more work for him.'"  *Id.* ¶ 16.  During his employment, "Martinez was repeatedly and openly called 'wetback, border jumper, spick, and Mexican cockroach' by his supervisor[.]"  *Id.*  Martinez repeatedly complained to supervisors Geiger and Singh and to owner Rubenstein about Navoa's comments, but NAT never investigated the complaints, ignored the complaints, allowed the conduct to continue, and terminated Martinez from his employment with NAT after his numerous complaints to management.  *Id.* ¶¶ 17-18.[3]

### III. ANALYSIS

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff."  *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).  However, the complaint must indicate more than mere speculation of a right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Threadbare recitals of

---

[3] Plaintiffs also allege that Navoa, Singh and Geiger are all employees of NAT, and their conduct as alleged in the complaint occurred during their official duties.  *Id.* ¶ 23.  As such, plaintiffs allege that NAT is vicariously liable for their tortious conduct.  *Id.* ¶ 24.

the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).[4]  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**A.  Race and National Origin Discrimination**

    1.  <u>Title VII</u>

    Defendants argue that plaintiffs fail to allege that they have administratively exhausted their Title VII claim.  Dkt. # 14 at 4.  Defendants cite two Eastern District of California cases for the proposition that when a plaintiff alleges violations of Title VII, he must also allege that he has administratively exhausted these claims and received a right to sue letter from the EEOC.  *Id.*  This court is not bound by other district court decisions, and defendants have failed to explain why those cases are factually analogous.  Notably, defendants do not argue that plaintiffs actually did not exhaust their administrative remedies, or that their complaint was filed untimely.  Dkt. # 14 at 4.  The court takes judicial notice of the EEOC determinations regarding Thompson's and Martinez's claims, and the notice of right to sue letters from all plaintiffs, which indicate that they filed charges and received right-to-sue letters.  Dkt. # 17-3 to 17-6.  Since these documents are subject to judicial notice, the court may consider them in addition to the allegations in the complaint.  Under these circumstances, defendants are not entitled to dismissal based on a failure to also allege facts demonstrating exhaustion.

    Defendants also argue that plaintiffs fail "to articulate the factual basis for their Title VII claim against their former employer, [and that in] the absence of any specifics,

---

    [4] Plaintiffs rely on outdated legal authority for the Rule 12(b)(6) standard.  This court is bound by *Twombly* and *Iqbal*, and plaintiffs' counsel should update his legal authority.  Failure to do so in the future may subject counsel to Rule 11 sanctions for presenting the court with arguments not supported by existing law.

1   it is not possible for NAT to determine the nature of Plaintiffs' individual . . . Title VII

2   claim[.]" Dkt. # 14 at 4.  As summarized above in the background section, plaintiffs have

3   alleged the factual basis of their Title VII claims for disparate treatment and hostile work

4   environment against NAT.  Whether or not those factual allegations are sufficient to

5   plausibly allege a claim for disparate treatment discrimination or hostile work

6   environment based on race and national origin is a separate question that defendants have

7   not addressed.[5]  Dkt. # 14 at 4.

8        Defendants also argue that "the Ninth Circuit has 'consistently held that Title VII

9   does not provide a cause of action for damages against supervisors or fellow employees.'

10  *Id.* (citing *Holly v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003)).  Plaintiffs do

11  not dispute the Ninth Circuit precedent, and this court agrees.  Accordingly, the court

12  GRANTS defendants' motion with respect to plaintiffs' Title VII claims against the

13  individual defendants.

14        2.  WLAD

15        Defendants argue that plaintiffs "have failed to articulate the factual basis for their

16  individual . . . [WLAD] claims against any of the Defendants[, and that absent] specifics,

17  it is not possible for Defendants to determine the nature of Plaintiffs' individual . . .

18  discrimination claims[.]" Dkt. # 14 at 5. The court has already rejected this argument

19  with respect to Title VII, and the court's determination applies equally to the WLAD.

20        Defendants also argue that plaintiffs have failed to plead any facts sufficient to

21  hold any of the individual defendants liable under the WLAD, citing only *Brown v. Scott*

22  *Paper Worldwide Co.*, 143 Wn. 2d 349, 361 (2001).  Dkt. # 14 at 5.  In *Brown*, the

23  Washington Supreme Court held that individual supervisors, along with their employers,

24  may be held liable for their discriminatory acts.  *Id.*  The Court construed RCW

---

26        [5] The court notes that plaintiffs appear to rely on the same factual allegations for their
    disparate treatment and hostile work environment claims, although plaintiffs present both claims
27    under the same heading of discrimination on the basis of race and national origin.

49.60.040(3) to mean that "a supervisor acting in the interest of an employer who employs eight or more people can be held individually liable for his or her discriminatory acts." *Id.* at 358. The Court also reasoned that the Legislature's intent to hold supervisors personally liable is manifested in RCW 49.60.220, which makes it an unfair practice for any person to aid, abet, encourage, or incite the commission of an unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of the WLAD. *Id.* at 360.

Here, plaintiffs have alleged that Geiger, Singh and Navoa are supervisors. Plaintiffs have also alleged that they reported Navoa's discriminatory comments and conduct to Geiger, Singh, and owner Rubenstein, all of whom ignored the complaints, failed to take any action, and allowed the discrimination to continue. Under *Brown* and RCW 49.60.220, the court believes these allegations are sufficient to plausibly allege individual liability of the supervisors and the owner.[6]

**B. Outrage**

Defendants argue that plaintiffs' outrage claim should be dismissed because it is "virtually identical" to the outrage claim alleged in *Wright v. North American Terrazzo, Inc.*, that Judge Robart dismissed as a matter of law. Case No. C12-2065JLR, Dkt. # 20 at 7-8 (2013 WL 441517 (W.D. Wash. Feb. 5, 2013)), # 33 at 13-15 (June 10, 2013). The court disagrees.[7] Plaintiffs' outrage claim, while sharing some common allegations,

---

[6] Defendants fail to cite any other legal authority, or otherwise provide any analysis or argument regarding the prima facie elements for disparate treatment and hostile work environment claims under the WLAD. The court declines to undertake such an analysis *sua sponte*.

[7] This court respectfully disagrees with the *Wright* court to the extent that it can be construed to mean that a supervisor that repeatedly spews racially charged and racially hostile comments at employees, as a matter of law, is not sufficiently extreme or outrageous to survive a motion to dismiss. *See Contreras v. Crown Zellerbach Corp.*, 88 Wash. 2d 735, 741, 565 P.2d 1173 (Wash. 1977) ("When one in a position of authority, actual or apparent, over another has allegedly made racial slurs and jokes and comments, this abusive conduct gives added impetus to the claim of outrageous behavior.").

1  allege much more egregious conduct here.  In *Wright*, there was only one plaintiff, and

2  his outrage claim consisted of an allegation that the defendants "repeatedly called the

3  plaintiff 'white boy' and stated that they were going to get rid of all the 'white

4  motherfuckers' and make the site a minority run site only'" and that defendants called

5  other workers racially disparaging names.  Dkt. # 20 at 7 (2013 WL 441517 at *4), # 33

6  at 14-15.  Here, there are five plaintiffs and each of them has alleged that their supervisor

7  repeatedly used racial slurs, racially charged language, and other offensive and hostile

8  statements including, "nigger, white wash, black motherfucker, fucking nigger, terron,

9  mayate, and Uncle Tom[,]" "white boy, honky, white mother****er, and white trash[,]"

10  "Russian motherfucker," "wet back, border jumper, spick, and Mexican cockroach."

11  The court finds that these allegations are sufficient to plausibly allege extreme and

12  outrageous conduct to survive a motion to dismiss. *See Contreras*, 88 Wash. at 741

13  ("When one in a position of authority, actual or apparent, over another has allegedly

14  made racial slurs and jokes and comments, this abusive conduct gives added impetus to

15  the claim of outrageous behavior.").

16  **C. Negligence & Negligent Supervision**

17  Defendants argue that plaintiffs have failed to provide sufficient factual allegations

18  that defendants are subject to liability for negligently failing to properly train and

19  supervise its employees, and for failing to adequately investigate and discipline those

20  employees and supervisors.  Dkt. # 14 at 7.  Defendants do not provide the court with any

21  legal authority to support their substantive argument.[8]  Accordingly, the court has

22  disregarded it.[9]

23

24       [8] The court notes that it appears that plaintiffs have plausibly alleged a claim for
25  negligent supervision where they allege that supervisor Navoa made numerous racially-charged,
    abusive, and offensive comments to plaintiffs, that other supervisors and the owner were told
26  about Navoa's conduct, that the supervisors and owner failed to take any action to remedy
    Navoa's conduct and allowed the discriminatory verbal abuse to continue, and that plaintiffs
27  were harmed by Navoa's conduct and the inaction of the other supervisors and owner.  *See Niece*

**D.  Negligent Infliction of Emotional Distress**

Defendants argue that the court should follow the reasoning in *Wright*, and dismiss plaintiffs' negligent infliction of emotional distress claim for failure to allege facts demonstrating a mental or emotional disorder, such as neurosis, psychosis, chronic depression, phobia, or any other type of severe disabling emotional or mental condition which may be generally diagnosed by professionals trained to do so.  Dkt. # 14 at 7 (citing 2013 WL 441517).  Plaintiffs concede that they must allege facts demonstrating objective symptomology.  Dkt. # 17 (Opp'n) at 8 (citing Washington Supreme Court cases for the proposition that a plaintiff may recover for negligent infliction of emotional distress if she proves duty, breach of the standard of care, proximate cause, damage, and objective symptomology).

The *Wright* court relied on *Hegel v. McMahon*, which confirmed that negligent infliction of emotional distress claims require plaintiffs to demonstrate objective symptoms of their emotional injury.  136 Wash. 2d 122, 126, 960 P.2d 424 (Wash. 1998). The Court held that to satisfy the objective symptomology requirement, a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence.  *Id.* at 135.  The Court also noted that examples of emotional distress would include neuroses, psychoses, chronic depression, phobia, shock, post traumatic stress disorder, or any other disabling condition.  *Id.* n. 5.

---

*v. Elmview Group Home*, 131 Wash. 2d 39, 48-49, 51, 929 P.2d 420 (Wash. 1997) ("employer is not liable for negligent supervision of an employee unless the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others"; "theory of negligent supervision creates a limited duty to control an employee for the protection of third-parties, even where the employee is acting outside the scope of employment").

[9] Neither party has addressed whether plaintiffs' claim for "negligence" is the same as plaintiffs' claim for "negligent supervision."  Since plaintiffs have not distinguished between the two, the court construes plaintiffs' complaint to only allege a claim for negligent supervision.  If plaintiffs believe that these two claims should be distinct, they should make that clear in their amended complaint.

ORDER- 9

Here, plaintiffs allege that "defendants negligently caused the plaintiffs to suffer severe emotional distress that was supported by objective symptomology diagnosed by a doctor, psychiatrist or psychologist . . . ." Dkt. # 1 ¶ 51.  However, plaintiffs have not alleged the factual basis underlying the threadbare recitals of the elements and conclusory statements that the severe emotional distress was supported by objective symptomology diagnosed by a doctor.  Accordingly, plaintiffs have not plausibly alleged a claim for negligent infliction of emotional distress.  Nevertheless, the court believes leave to amend is appropriate to allow plaintiffs the opportunity to allege the factual basis for their claim.

**E.  Wrongful Discharge**

Defendants argue that plaintiffs fail to identify the nature or source of the employment contract, the dates of alleged employment, the collective bargaining agreement between the Union and NAT, or any document that could create a contractual relationship between plaintiffs and defendants.  Dkt. # 14 at 8.  Defendants have failed to provide the court any legal authority that would require plaintiffs to allege any of these facts for a wrongful discharge claim. Accordingly, the court has disregarded these arguments.

Defendants also argue that under Washington law, there is no covenant of good faith and fair dealing in the employment context, citing *Thompson v. St. Regis Paper Co.*, 102 Wn. 2d 219 (1984).  Dkt. 14 at 8.  The *Thompson* court created a cause of action in tort for wrongful discharge of an employee where there is a violation of a clear mandate of public policy.  102 Wn. 2d at 233.  In creating this narrow exception to the employment-at-will doctrine, the Court declined to adopt a "bad faith" exception to the employment-at-will rule which would have implied a covenant of good faith and fair dealing in every employment contract.  *Id.* at 227-28.  Plaintiffs do not dispute that Washington courts do not recognize a covenant of good faith and fair dealing in the employment context.   Accordingly, defendants are entitled to dismissal of the wrongful discharge claim to the extent it relies on a covenant of good faith and fair dealing.  Dkt. #

1   1 ¶ 55 ("The plaintiffs also had . . . an implied covenant of good faith and fair dealing

2   with the defendants.").

3   **F. FLSA**

4       Defendants argue that the court should dismiss plaintiffs' FLSA claim as time-

5   barred, as the court did in *Wright*.  Dkt. # 14 at 8-9.  In *Wright*, the court dismissed

6   plaintiff's FLSA claim based on the two-year statute of limitations because plaintiff had

7   not alleged that defendant's conduct was "willful" as contemplated by the FLSA.  Case

8   No. C12-2065JLR, Dkt. # 33 at 10 (citing 29 U.S.C. § 255(a) & *McLaughlin v. Richland*

9   *Shoe Co.*, 486 U.S. 128, 131 (1988)).

10      An action under the FLSA "must be commenced within two years 'except that a

11  cause of action arising out of a willful violation may be commenced within three years

12  after the cause of action accrued.'"  *McLaughlin*, 486 U.S. at 129.  A defendant acts

13  willfully under the FLSA if it knew or showed reckless disregard for the matter of

14  whether its conduct was prohibited by the FLSA.  *Id.* at 130-31.  If an employer acts

15  unreasonably, but not recklessly, in determining its legal obligation under FLSA, its

16  action is not willful.  *Id.* at 135 n.13.

17      Plaintiffs allege that NAT (1) "intentionally and purposefully den[ied] overtime

18  pay which had been owed to plaintiffs"; and (2) "intentionally, purposefully, subjectively

19  and arbitrarily reduced the plaintiffs' hourly salary and their job description based on

20  arbitrary and capricious decisions . . . ."  Dkt. # 17 (Opp'n) at 9-10 (citing Compl. ¶¶ 59-

21  60).  These allegations fall short to plausibly allege the application of the three-year

22  statute of limitations because they do not allege the factual basis for NAT's knowledge or

23  reckless disregard that its conduct was prohibited by the FLSA.

24      Plaintiffs do not dispute that their FLSA claim is barred by the two-year statute of

25  limitations.  Accordingly, the court dismisses plaintiffs' FLSA claim without prejudice.

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**IV. CONCLUSION**

For all the foregoing reasons, the court GRANTS in part and DENIES in part defendants' motion to dismiss.  The court dismisses with prejudice plaintiffs' (1) class claims, (2) Title I of 1991 Civil Rights Act claim, (3) Title VII claim against all individual defendants, and (4) wrongful discharge claim, but only to the extent that it relies on an implied duty of good faith and fair dealing.  The court dismisses without prejudice plaintiffs' claims for (1) negligent infliction of emotional distress and (2) FLSA violation.  Plaintiffs may file a First Amended Complaint consistent with this order no later than twenty-one (21) days from the date of this order.

Dated this 19th day of May, 2014.

The Honorable Richard A. Jones
United States District Judge